Fuchsberg, J.
(dissenting). I write more fully than does Judge Wachtler to express my dismay and concern that Barasch v Micucci (49 NY2d 594), which expressly stated that only in “rare instances” (Barasch, at p 601) could or would we superimpose our authority as a court of law in matters relating to the everyday management of litigation, has not stayed within bounds. For, in the hierarchy of New York courts, such issues are, and should be, left essentially in the hands of the four departments of the Appellate Division and, in the first instance, of the courts over which they exercise their supervisory powers.
It is regrettable, therefore, as the majority opinion in the case before us now so well illustrates, that there has resulted the misperception that Barasch enjoins our intermediate appellate courts to substitute harsh and unbending procedural disciplines for sensible, informal, everyday courtesies which, as overburdened Trial Judges and busy litigating lawyers will appreciate, well served important *904 cost and convenience considerations (see, e.g., A & J Concrete Corp. v Arker, 54 NY2d 870, 872-873 [concurring opn]; see, also, Cohen v First Nat. City Bank, 52 NY2d 863; Merchandising Presentation v Blumenfeld, 52 NY2d 867; Jamaica Buses v Connor, 52 NY2d 868; Steen v New Deal Delivery Serv., 54 NY2d 796; Premo v Cornell, 55 NY2d 962).
In the immediate case, the question is whether the Appellate Division, because, in the interest of justice, it vacated defendant Marine Midland Bank’s short default in serving its answer — if default it was — may be said to have abused its discretion as a matter of law. The majority, in summary memorandum, says it did. It appears crystal clear to three members of this court that it did not. The details are instructive.
Plaintiff William Eaton was employed by the bank at age 71. He and his wife commenced this suit to recover $6,780 incurred four months later for his wife’s medical treatment, which they claim was covered by the bank’s major medical group policy with defendant Equitable Life Insurance Company. Besides nonpayment, plaintiffs’ freewheeling five-count, 74-paragraph complaint alleges, among other things, mutual mistake on the part of the employee and the bank (which they assert is an agent of Equitable), unconscionable conduct on the part of both the bank and Equitable (which is also joined as a defendant), misrepresentations by the bank as to the extent of the coverage and failure of St. Vincent’s Medical Center (hospital) (joined as still another defendant) to advise the plaintiffs to apply for Medicaid benefits. The prayer for relief ambitiously demands that the hospital be enjoined for collecting its charges under the provisions of the “Hill-Burton Act * * * under which the Hospital agreed * * * to furnish free and below-cost services to persons unable to pay * * * and to refrain from making collection efforts”, that a declaratory judgment issue and the like. The complaint indicates too that all but $124 of the claim was rejected by Equitable as beyond its coverage.
The complaint was served on the bank on December 19, 1979. The bank, as a matter of course, had until January 9 to answer (CPLR 3012), but, before this period expired, and *905 again later that month, counsel for both sides agreed on short extensions and, finally, on February 7, to a third one, which was for no fixed time period. Instead, as the bank’s counsel remembers it, the answer was to be served “as soon as I could”, while, according to plaintiffs’ counsel’s later recollection, the agreement was for a seemingly equivalent “put it in the mail soon”. All the extensions were arranged by telephone, one being confirmed by letter as well. Four weeks later, on March 7, without notifying the bank’s counsel of their intention to do so, plaintiffs entered an ex parte default judgment against it.
When the bank moved to open the default, Special Term, in a brief memorandum in which it chose to treat this train of events as “law office failure”, denied the motion in the exercise of its discretion. However, on appeal, the majority at the Appellate Division, persuaded by the “relative shortness of the delay, the nature of appellant’s excuse, the apparent existence of a meritorious defense, the promptness with which appellant moved to vacate its default, and the absence of any apparent intention on its part to abandon its defense to the action”, reversed and vacated the default, likewise in the interest of justice. (81 AD2d 653.) Moreover, to “redress any inconvenience which the plaintiffs may have suffered”, it conditioned this relief on the bank’s payment of $500 to plaintiff, a condition that was met. But, two dissenting Justices, acting on no more than their own assumption that “soon” means “two weeks” and counsel’s explanation for having requested the extensions — essentially, the relatively complex nature of the issues raised by the pleadings, including the interplay between Medicaid coverage and the terms of the policy it had purchased from Equitable, and the inability of the bank to locate the part of the policy containing the provisions governing coverage of persons over age 65 — voted to affirm because of what they apparently took to be the compulsions of Barasch v Micucci (supra).
But Barasch itself emphasizes that it is only the extraordinary case in which an exercise of discretion by the lower courts, especially in the management of the procedural aspects of litigation, will “give rise to a question of law that is cognizable in this court” (Barasch, at p 598; Elias v *906 Prudential Inv. Corp., 50 NY2d 924, mot for rearg den 51 NY2d 771; Jones v Maphey, 50 NY2d 971, 973; Paradis v Doyle, 291 NY 503; Cohen & Karger, Powers of the New York Court of Appeals, §§ 151, 158; 7 Weinstein-KornMiller, NY Civ Prac, par 5501.17). In reiterating this fundamental principle of New York practice, Barasch also acknowledges that, “[bjecause the circumstances which may cause a plaintiff to postpone service of his complaint are too numerous and varied to be categorized in any systematic fashion, we are reluctant to adopt an inflexible set of rules to govern the lower courts’ decisions in this area” (Barasch, at p 600).
It nevertheless also declares that, before vacating a procedural default (in Barasch, late service of a complaint), a fact-finding court should insist on a showing of legal merit and a reasonable excuse for the delay, of which “law office failure” is to be looked upon askance. As we shall see, the Appellate Division’s holding on the motion in the case before us came well within these criteria.
First, as to the merits, the three affidavits which form part of the bank’s moving papers develop that, contrary to the complaint’s allegation that the bank had “negligently misrepresented the extent of the major medical coverage”, the bank, far from misrepresenting, had issued the husband an “Employee Handbook” which indicated that coverage after 65 would be subject to Medicaid benefits. It is then no surprise that the majority at the Appellate Division found “the apparent existence of a meritorious defense” and that the dissenters suggested nothing to the contrary.
Second, this case is simply not one involving “law office failure”, a term connoting such matters as “misplaced files, overlooked time periods, preoccupied attorneys, and the like” (Siegel, “Law Office Failures” No Excuse For Nonservice of Complaint, New York State Law Digest, No. 247; see, also, the three definitional cases cited by Barasch itself [at p 599], i.e., Ferrentino v Farragut Gardens, No. 5, 35 AD2d 815, app dsmd 28 NY2d 579 [counsel misplaced file]; Kriegsman v Rosenfeld, 35 AD2d 693 [counsel misplaced file]; Wade v Miele, 34 AD2d 656 [counsel delayed complaint for 18 months]).
*907 Rather, here the explanation for delay may well start by observing that the complaint, on its face, is of such an all-embracing nature that it must have presented the bank’s counsel with the troublesome problems of a seemingly simple case whose reach the pleading had turned into a potentially complex, multiparty litigation. Furthermore, as one of the affiants explains, the expansive nature of the suit put an unusual burden on counsel, inter alia, to investigate facts and assemble documents, in the course of which it was discovered that the bank had no copy of certain provisions believed pertinent to the case. If this be “failure”, obviously it was the bank’s and not counsel’s “failure”. Nor was it “failure” in the litigation, but, if at all, “failure” preceding the litigation. In short, in no way was it “law office failure”.
In any event, the affiant fairly described how he had attempted to locate the missing matter by “request[ing] the same from the carrier, Equitable Life; have had correspondence and numerous telephone calls with Equitable; but have thus far been unsuccessful in obtaining it” (sic). He further averred that, before promising to get the bank’s answer to plaintiffs’ counsel “as soon as I could”, he informed the latter that he needed the time because of the trouble he was having in locating a portion of the policy.
Ironically, the indulgence the bank’s counsel had asked of the plaintiffs was minimal. The bank’s answer was first due on January 9 and, if pressed, the bank had a right to serve it in incomplete form and then replace it with an amended version as a matter of course by January 29 (CPLR 3025). Therefore, until then, it had requested no courtesy it could not have had as a matter of right.
The only extension after this date was one requested on February 7. Culminating in the “as soon as I could” agreement, this sine die arrangement was one at will, thus terminable either by the bank’s service of the answer or the plaintiff’s request that it be served forthwith. Absent such a step by either party, there certainly was no basis for converting the unfixed terminal date, as only the dissenters at the Appellate Division would do, into a fixed one for two weeks. Would it then be illogical or unreasonable to regard the plaintiffs’ entry of an ex parte judgment as *908 anything less than a violation of the understanding between the parties?
But it is unnecessary to resolve this question. Suffice it to say that, in these circumstances, it cannot justly be said that the Appellate Division abused its discretion by vacating the default. At most, all the bank failed to do was commit the undisputed stipulation to writing or burden the court with a routine motion for a short extension, the grant of which was all but inevitable.
To this we add that (a) plaintiffs’ suit was not started until two years after their medical bills had been rejected, (b) this helps explain why no prejudice ensued for the plaintiffs and it is noteworthy that none is ascribed to the relatively short “delay” in answering before the “default” judgment was taken so precipitously, and (c) presumably, the bank is not judgment proof, if ever the plaintiffs can demonstrate their cause has any merit.
Finally, while it should be superfluous to have to do so, I observe, as do my fellow dissenters, that, while in Barasch it was a plaintiff who was moving to open its default, here it was a defendant. A plaintiff, invoking the aid of a court, bears the burden of moving the case forward. If his claim is forfeited because of a default, all he may be losing is a claim on which he never could have succeeded. A defendant, on the other hand, is usually haled into court against his will. If charged with a default, he may find himself liable for a claim which he did not owe and which never could have been proved. Consequently, discretion to vacate defaults traditionally has been exercised more liberally in favor of defendants (see Sortino v Fisher, 20 AD2d 25, 30; Siegel, Supplementary Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3215:24, 1981-1982 Cum Ann Pocket Part, pp 263, 264). But, an ever more voracious Barasch apparently knows no limits. It is long past the time when the line should have been drawn.
For all these reasons, the order of the Appellate Division should be affirmed.
Chief Judge Cooke and Judges Gabrielli, Jones and Meyer concur in memorandum; Judges Wachtler and *909 Fuchsberg dissent and vote to affirm in separate dissenting opinions in each of which Judge Jasen concurs.
Order reversed, with costs, the order of Supreme Court, Richmond County, reinstated, and the question certified answered in the negative.